MILLER et al. v. BELVY OIL CO.

(Circuit Court of Appeals, Eighth Circuit. November 12, 1917.)

No. 4895.

1. JUDGMENT ☞713(2)—CONCLUSIVENESS OF ADJUDICATION—MATTERS NOT IN ISSUE.

When a second suit is between the same parties or their privies and upon the same cause of action as a former suit, the judgment or decree in the first is conclusive upon all the parties and their privies in the second suit, not only as to every question and issue which was, but also upon every question and issue, claim, or defense, which might have been presented in the first suit; but where the second suit is upon a different cause of action, but between the same parties as the first, or their privies, the judgment or decree in the first operates as an estoppel in the second only as to those points or questions which were actually litigated and determined in the first suit.

2. JUDGMENT ☞713(2)—RES JUDICATA—IDENTITY OF CAUSES OF ACTION.

A decree for the defendant in a suit by a lessor for the cancellation of a lease and its assignment as clouds upon his title is a bar to a second suit by the lessor or his privies for the same relief upon different grounds, but which might have been set up in the former suit.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. JUDGMENT ☜731—RES JUDICATA—EXCLUSION OF ISSUES.
   That the court, after having announced its decision in a suit, refused
to permit the filing of an amended complaint setting up additional
grounds for the relief prayed for, does not change the effect of the de-
cree as a bar to a second suit by plaintiff for the same relief.

4. JUDGMENT ☜682(1)—PERSONS CONCLUDED—PURCHASERS PENDENTE LITE.
   One who, pending a suit to cancel a lease, made a contract with the
lessor, who was plaintiff, to purchase the land in case the lease was
canceled, became from that time privy to the suit, and was bound by
the decree therein, although it was adverse to the lessor.

Appeal from the District Court of the United States for the Eastern
District of Oklahoma; Ralph E. Campbell, Judge.

Suit in equity by Emil C. Miller and W. H. Byron against the Belvy
Oil Company. Decree for defendant, and complainants appeal. Af-
firmed.

Charles West, of Oklahoma City, Okl., for appellants.

John J. Shea, of Tulsa, Okl. (Thomas F. Shea, of Deer Lodge,
Mont., and Burdette Blue, of Bartlesville, Okl., on the brief), for ap-
pellee.

Before SANBORN, CARLAND, and STONE, Circuit Judges.

SANBORN, Circuit Judge. This is an appeal from a decree of dis-
missal of the complaint in a suit in equity upon the ground that the
matters which the plaintiffs sought to litigate were res adjudicata by
reason of a former suit and decree. On December 9, 1910, James C.
Cowles, Jr., the lessor, brought a suit in equity against Alva C. Lee, his
lessee, in the district court of Washington county, Okl., to cancel and
avoid his oil and gas lease, and for such other equitable relief as might
be just and proper. Pleadings were made, the Belvy Oil Company,
an assignee of the lease, was made a party defendant and answered the
complaint, the trial was had and a decree was rendered that the plain-
tiff take nothing by the action, that the Belvy Oil Company was the
full legal and equitable owner of the lease, and of all the rights of the
lessee thereunder, that the plaintiff James C. Cowles, Jr., and any and
all persons acting by, through or under him, were enjoined from inter-
fering with or molesting the Belvy Company in the possession of the
leased premises, or in the operation of the lease, and that the plaintiff
pay the costs. This decree was rendered on September 5, 1911. Dur-
ing the pendency of that suit in the state court Emil C. Miller and W.
H. Byron succeeded to the rights of the lessor, Cowles, Jr., and the
Belvy Oil Company succeeded to the rights of the lessee, Lee. After
the rendition of the decree Miller and Byron brought suit in the court
below against the Belvy Oil Company to cancel and set aside the lease
involved in the first suit, to enjoin the Belvy Oil Company from enter-
ing upon the leased premises, operating them for oil and gas, or de-
veloping the production of oil or gas thereon, and for such other relief
as the equity of the case might warrant. As Miller and Byron suc-
ceeded to the rights of the lessor, Cowles, Jr., and the Belvy Oil Com-
pany succeeded to the rights of the lessee, Lee, pendente lite, their
respective rights against each other are the same as they would have

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

been if Miller and Byron had been lessors and the plaintiffs and the Belvy Company had been the lessee and the defendant in the first suit. For the sake of brevity, therefore, this case will be treated as though they had been, and Miller and Byron will be called the plaintiffs and the Belvy Oil Company the defendant.

James C. Cowles, Jr., was a member of the Cherokee Tribe of Indians. He had only a small fraction of Indian blood. On March 6, 1907, when the lease was made, he was a minor, and he became of age on July 1, 1910. The lease was made by James C. Cowles, Jr., and James C. Cowles, as guardian of James C. Cowles, Jr., pursuant to an order of the United States Court for the Northern Judicial District of the Indian Territory, which court had both chancery and probate jurisdiction. It covered the allotment of Cowles, Jr., as a Cherokee Indian and its term was 15 years, thus extending more than 11 years after he became of age.

In the course of the litigation through the two suits the plaintiffs have alleged in all 12 reasons why the lease and the assignment to the Belvy Oil Company should be decreed to be void and be canceled:

(1) That the lessee had failed to pay the royalties reserved in the lease.

(2) That the lessee had failed to explore and develop the leased land for natural gas and oil as he had agreed to do by the terms of the lease.

(3) That the lessee assigned the lease without the consent of the lessor.

(4) That Cowles, Jr., had attained his majority, that he had never ratified the lease, and that it had been and was avoided as to that part of its term which extends beyond his minority.

(5) That the court under whose order the lease was made had no jurisdiction to direct the lease of his land beyond his minority.

(6) That that court had no authority to permit or make the lease, because the proceedings therein for that purpose failed to comply with indispensable statutory requirements relating to such proceedings.

(7) That the lease was assigned without the consent or approval of the lessor or the Secretary of the Interior.

(8) That the lease was not recorded as required by section 20 of the Act of April 26, 1906 (34 Stat. 145, c. 1876).

(9) That the lease of the land of the minor Indian allottee, Cowles, Jr., was forbidden, unless made in the manner expressly authorized by statute; that the proceeding in the United States Court for the Northern District of the Indian Territory, pursuant to which the lease was ordered and made, was a proceeding to give rights of majority to Cowles and to allow him to make the lease; that this was not an authorized method of alienation, and was not a proceeding permissible or in conformity to the applicable statutes in order to permit a guardian to make a lease of the lands of a minor Indian allottee.

(10) That the consent of the Secretary of the Interior to the assignment of the lease to the defendant had never been obtained.

(11) That the assignment of the lease to the defendant was not made in accordance with the rules and regulations of the Secretary and

would not have been approved if it had been presented to him before the authority to approve it was abolished by the Act of April 26, 1906.

(12) That after the Secretary's authority to approve the assignment had been abolished the plaintiffs presented to him the facts regarding the same and he declined to act because he had no authority so to do.

The fundamental cause of action in both suits is that the lease and its assignment to the defendant are apparently valid, but were actually void; that they apparently conferred rights on the defendant, but actually conferred no rights; that they, therefore, created a cloud upon the plaintiffs' title, and gave to the defendant an apparent right to possess, develop, and operate the premises for oil and gas, while it had no such right. In their original complaint in their first suit the plaintiffs pleaded the first four grounds or reasons above stated for this cause of action; in a second amended complaint in that suit, which the plaintiffs first tendered after the court had announced its decision of the case, and which the court refused to permit to be filed, but marked tendered and made a part of the record, they pleaded the fifth, sixth, and seventh grounds or reasons above stated; and in the complaint in this, the second suit, they have pleaded the eighth, ninth, tenth, and eleventh grounds or reasons for this cause of action. The question in this case, therefore, is: May the plaintiffs, in view of the decree against them in their first suit to cancel this lease and assignment, remove the cloud they are alleged to cause, and enjoin the defendant from their use, maintain this second suit for substantially the same relief?

[1] The rules of estoppel which must determine the answer to this question are: When the second suit is between the same parties, or their privies, and upon the same cause of action as the first, the judgment or decree in the first is conclusive upon all the parties and their privies in the second suit, not only as to every question and issue which was, but also upon every question and issue, claim, or defense which might have been presented in the first suit. But where the second suit is upon a different cause of action, but between the same parties as the first, or their privies, the judgment or decree in the former operates as an estoppel in the latter as to every point or question which was actually litigated and determined in the first action, but it is not conclusive relative to other matters which might have been, but were not, litigated and decided. Cromwell v. County of Sac, 94 U. S. 351, 24 L. Ed. 195; Union Central Life Ins. Co. v. Drake, 214 Fed. 536, 542, 131 C. C. A. 82, 88. One may not split his cause of action. An action upon an indivisible cause and an adjudication thereof bars a subsequent action between the same parties and their privies upon the same cause. Brown v. First National Bank, 132 Fed. 450, 451, 66 C. C. A. 293, 294; Id., 196 U. S. 641, 25 Sup. Ct. 796, 49 L. Ed. 631; Harrison v. Remington Paper Co., 140 Fed. 385, 397, 72 C. C. A. 405, 417, 3 L. R. A. (N. S.) 954, 5 Ann. Cas. 314; Watkins v. American Nat. Bank, 134 Fed. 36, 41, 67 C. C. A. 110, 115.

[2] Counsel for the plaintiffs argues that they are not estopped by the decree in the first suit from maintaining the second suit because the two suits are founded on different causes of action. Taking, for illustration of his argument, the ninth alleged ground or reason why

the lease is asserted to be void, which was pleaded for the first time in the complaint in the second action, he contends that this constitutes a different and independent cause of action from that set forth in the complaint in the first action, in which were pleaded the first four reasons only, and he cites in support of this view Lim Jew v. United States, 196 Fed. 736, 116 C. C. A. 364; Water, Light & Gas Co. v. City of Hutchinson, 160 Fed. 41, 90 C. C. A. 547, 19 L. R. A. (N. S.) 219; Wyman v. Bowman, 127 Fed. 257, 62 C. C. A. 189; Lublin v. Stewart, Howe & May Co. (C. C.) 75 Fed. 294; Delaware, L. & W. R. Co. v. Kutter, 147 Fed. 51, 77 C. C. A. 315; Radford v. Myers, 231 U. S. 725, 34 Sup. Ct. 249, 58 L. Ed. 454; Harrison v. Remington Paper Co., 140 Fed. 385, 72 C. C. A. 405, 3 L. R. A. (N. S.) 954, 5 Ann. Cas. 314; Union Central Life Ins. Co. v. Drake, 214 Fed. 536, 131 C. C. A. 82; Troxell v. Del., Lack. & Western R. R., 227 U. S. 434, 33 Sup. Ct. 274, 57 L. Ed. 586. He declares that the Troxell Case is the best case he has cited. In that case the parties were not the same. In the first action the plaintiff was the surviving widow and the two living children of the deceased; in the second action the plaintiff was the same widow as administratrix of the deceased. 227 U. S. 443, 444, 33 Sup. Ct. 274, 57 L. Ed. 586; American Railroad Co. v. Birch, 224 U. S. 547, 32 Sup. Ct. 603, 56 L. Ed. 879. In that case the cause of action in the first suit was the failure of the defendant railroad company to use reasonable care to supply reasonably safe and proper appliances and instruments in violation of the law of Pennsylvania under which the negligence of fellow workmen is no ground for recovery. In the second action the cause was the negligence of the defendant under the federal Employers' Liability Act, as amended (Act April 22, 1908, c. 149; 35 Stat. 65 [Comp. St. 1916, §§ 8657–8665]; Act April 5, 1910, c. 143, 36 Stat. 291), under which a recovery could be and was had for the negligence of the fellow workmen of the deceased, 227 U. S. 441, 33 Sup. Ct. 274, 57 L. Ed. 586.

In Union Central Life Ins. Co. v. Drake, 214 Fed. 536, 546, 547, 131 C. C. A. 82, 92, 93, upon which counsel seems to place some reliance, the insurance company had three separate and independent liens upon the property of a bankrupt, its lien for $10,080 by subrogation to the rights of the mortgagees of three prior mortgages, its lien for $10,000 by its separate and independent mortgage, and its lien for about $50,000 by virtue of a transaction termed the mortgage of December 20, 1907. It brought its suit to foreclose the mortgage of December 20, 1907, and made no claim in that suit on account of any of its other liens. The trustee for the bankrupt's estate defended on the ground that the mortgage of December 20, 1907, was a voidable preference, and the insurance company was defeated. The trustee then brought a suit to set aside the mortgage of December 20, 1907, as a voidable preference, and also to avoid the claim of the insurance company to a lien upon the proceeds of the mortgaged property for $10,080 by subrogation to the rights of the three first mortgages. The insurance company answered and pleaded this claim for the $10,080, and the trustee asserted that the insurance company was estopped from maintaining its lien for this amount by the decree in the former suit. The court held that the suit on the $50,000 mortgage was upon a different cause of

action from that upon a lien by subrogation for the $10,080, and that the decree in the former suit did not render the latter lien res adjudicata. The other cases cited above are of a like nature. They are cases in which, as in the two reviewed, the causes of action were clearly different, independent and distinct.

The case in hand is better typified by United States v. California & Oregon Land Co., 192 U. S. 355, 356, 358, 24 Sup. Ct. 266, 48 L. Ed. 476; Northern Pacific Ry. Co. v. Slaght, 205 U. S. 122, 27 Sup. Ct. 442, 51 L. Ed. 738; Dowell v. Applegate, 152 U. S. 327, 332, 333, 334, 341, 342, 343, 345, 14 Sup. Ct. 611, 38 L. Ed. 463; Beloit v. Morgan, 7 Wall. 619, 622, 19 L. Ed. 205; Wilson's Executor v. Deen, 121 U. S. 525, 534, 7 Sup. Ct. 1004, 30 L. Ed. 980. In United States v. California & Oregon Land Co., 192 U. S. 355, 356, 358, 24 Sup. Ct. 266, 48 L. Ed. 476, the United States brought a suit in equity to avoid certain of its patents and to forfeit all claims of the defendant thereunder on the ground that certain wagon roads in the state of Oregon were not completed within the time required by the grants of the United States under which the patents were issued. The defendant pleaded matters showing the validity of the patents and a decree was rendered in its favor. Then the United States brought a second suit to set aside the same patents and to recover the lands they described from the same defendant on the ground that the lands were excepted by the terms of the granting act from the grant under which the patents were issued. The Supreme Court held that the United States was estopped by the decree in the former suit from maintaining the second suit and said:

"The best that can be said, apart from the act just quoted, to distinguish the two suits, is that now the United States puts forward a new ground for its prayer. Formerly it sought to avoid the patents by way of forfeiture. Now it seeks the same conclusion by a different means, that is to say, by evidence that the lands originally were excepted from the grant. But in this, as in the former suit, it seeks to establish its own title to the fee. * * * But the whole tendency of our decisions is to require a plaintiff to try his whole cause of action and his whole case at one time. He cannot even split up his claim (Fetter v. Beale, 1 Salk, 11; Trask v. Hartford & New Haven Railroad, 2 Allen [Mass.] 331; Freeman, Judgments [4th Ed.] §§ 238, 241); and, a fortiori, he cannot divide the grounds of recovery." 192 U. S. 358, 24 Sup. Ct. 267, 48 L. Ed. 476.

In Northern Pacific Ry. Co. v. Slaght, 205 U. S. 122, 128, 131, 133, 27 Sup. Ct. 442, 51 L. Ed. 738, the predecessors in interest of the Northern Pacific Railway Company brought a suit in equity against Slaght, who was in possession of the land which was the subject of the suit under a homestead patent, to have him decreed to be a trustee of the title to the lands for the use and benefit of the plaintiffs on the sole ground that at the date of the issuance of the patent the land was not, nor was it at the time Slaght applied to enter it as a homestead, public land subject to settlement or entry under the land laws of the United States other than the grant of the land to the Northern Pacific Railroad Company of July 2, 1864, under which the plaintiffs claimed their title. The plaintiffs neither claimed nor pleaded any title or right to the land under any statute or theory, except that the land passed to them under the railway grant of July 2, 1864. Slaght demurred to the plaintiff's amended complaint, his demurrer was sustained and a

decree of dismissal of the suit was rendered. Thereafter the Northern Pacific Railway Company, which had succeeded to the rights to the land of the plaintiffs in the former suit and had no other rights, brought an action of ejectment against Slaght on the ground that its predecessors in interest had a perpetual right of way over the land by virtue of Act March 3, 1875, c. 152, 18 Stat. 482 (Comp. St. 1916, §§ 4921–4926), a claim which had not been pleaded in the former suit. The defendant interposed the defense of res adjudicata. The railway company asserted that the estoppel of the former decree "extends only to the very point raised in the pleading, and does not bar another action based upon other facts," that the effect of the decree was only to decide against the title specially set forth in the pleading and that "in this action the right asserted is a perpetual easement or way by virtue of the act of 1875 through the lands involved in the former suit. Not only was this right not pleaded in the former complaint, but under it the title now asserted could not have been proved." But the Supreme Court cited the general rule that in second actions between the same parties on the same cause the former judgments are conclusive of all claims that might have been litigated, declared that there was a distinction between personal actions and real actions, and from Herman on Estoppel, § 92, quoted with approval this paragraph:

"Although there may be several different claims for the same thing, there can be only one right of property in it; therefore, when a cause of action has resulted in favor of the defendant, when the plaintiff claims the property of a certain thing there can be no other action maintained against the same party for the same property, for that would be to renew the question already decided, for the single question in litigation was whether the property belonged to the plaintiff or not; and it is of no importance that the plaintiff failed to set up all his rights upon which his cause of action could have been maintained. It is sufficient that it might have been litigated."

It then cited the California & Oregon Land Company's Case, which has just been reviewed, and numerous other cases of like character, held that the former decree estopped the railway company from maintaining the second suit, and closed the discussion with these words:

"In other words, plaintiff in error, as successor of the Spokane & Palouse Railway Company, again asserts title to the very property that was the subject of the other suit, the source of title, only, being different. If this may be done, how often may it be repeated? If defeated upon the new title, may plaintiff in error assert still another one, either in its predecessor or in itself, and repeat as often as it may vary its claim? The principle of res adjudicata and the cases enforcing and illustrating that principle declare otherwise."

In the light of the opinions in these cases and those cited with them above, there can be no doubt that the alleged causes of action in the two suits under consideration are the same, and that the decree in the first suit renders every point, reason, ground, and suggestion made in the second suit res adjudicata, because every one of them might have been litigated in the first suit. The cause of action in each suit was the apparent validity of the lease and the assignment, and their actual invalidity and the apparent grant, but actual failure to grant, by them substantial rights to the defendant to possess, develop, and operate the leased premises for oil and gas. The reason for the rule on this sub-

ject is the injustice and intolerable vexation of numerous suits for the same cause. The plaintiffs now concede that they had about a dozen reasons or grounds for their cause of action, for the avoidance of the lease and assignment and the consequent accounting and other relief. They alleged seven of them in their first suit, four in the complaint, and five in the rejected amended complaint, filed after the announcement of the decision, and saved up the others for this suit. If they can now try the latter, there is no reason why they might not have maintained as many suits as they thought they had reasons or grounds for their cause of action, and there is no reason why, if defeated in the present suit, they might not maintain as many more suits for the same cause as the ingenuity and research of counsel may discover new reasons or grounds in the future. The salutary established rule, reason, and equity alike prohibit such a practice.

[3] But counsel for the plaintiff contends that there is an exception to the rule of estoppel which we have recited to the effect that one may maintain a second suit for the same cause upon reasons or grounds that were kept out of actual litigation therein at the instance of the opposite party or of the court, and that under this exception the plaintiffs are entitled to maintain this second suit upon the ninth, tenth, and eleventh grounds, which were included in the fifth, sixth, and seventh grounds pleaded in the second amended answer in the first suit, and were, by the refusal of the court to permit the filing of that answer, excluded from litigation therein. In support of this position he cites Virginia-Carolina Chemical Co. v. Kirven, 215 U. S. 252, 255, 256, 258, 260, 30 Sup. Ct. 78, 54 L. Ed. 179, in which Kirven sued the chemical company for damages arising from the destruction of crops caused by the defective manufacture by it of fertilizers which he had bought of it, and was met by the answer that his claim was barred by the judgment in a former action of the chemical company against Kirven upon his note for the price of the fertilizers. Kirven had answered in the first action that there was no consideration for the note in that the fertilizers were of no benefit but were a detriment to the crops. He had subsequently filed a supplemental answer, in which he omitted any reference to the damage to the crops and had presented a counterclaim for damages caused by the sale of his property under attachment proceedings instituted by the chemical company. During the trial the chemical company had objected to the evidence of damage to the crops which was offered by Kirven, and the court sustained the objection. The Supreme Court held that the judgment in the first suit was not a bar to Kirven's cause of action for a recovery of the damages resulting from the injury to the crops caused by the fertilizers, because that was a cross-demand which Kirven had the option to set up as a counterclaim or in recoupment in the first action, or to withhold and sue upon as a separate and independent cause of action. It held that this was a different cause of action from that in issue in the first action upon the note. 215 U. S. 257–261, 30 Sup. Ct. 78, 54 L. Ed. 179. It is true that in the course of the opinion the court also remarked that there was support for the contention that the company was estopped to urge that a defense that was excluded upon its objection was never in the action

and concluded by the judgment. But this was not the ground upon which it placed its decision. It put its decision upon the ground that the cause of action for the damages was a separate and independent cause of action from that presented in the action upon the note, and herein this case differs from the case at bar.

Counsel also cites Bingham v. Honeyman, 32 Or. 129, 51 Pac. 735, 52 Pac. 755, which is irrelevant, and Major v. Owen, 126 Minn. 1, 147 N. W. 662, Ann. Cas. 1915D, 589, wherein the Supreme Court of Minnesota held that a judgment in favor of Owen in an action brought by Major and others against him to quiet the title of land against adverse claims, in which the plaintiffs alleged that they were the owners of the land and the defendant Owen claimed the same, but had no right or interest in it, the defendant answered that he was the owner, and the plaintiffs had no right or interest in it, none of the parties pleaded any equitable rights or claims, and the judgment was that Owen was the owner, holding free of all claims of the plaintiffs, was not a bar to a subsequent suit in equity by Owen to recover from the plaintiffs in the first suit the proceeds of the land, upon the ground that the deed, by virtue of which he secured his judgment against Owen, was fraudulent and void, because it was procured by him without consideration with the intent and purpose of cheating and defrauding Owen. But this decision of the Supreme Court of Minnesota runs clearly counter to repeated decisions of the Supreme Court of the United States and of the other national courts, and may not prevail here. Dowell v. Applegate, 152 U. S. 327, 341, 344, 345, 14 Sup. Ct. 611, 38 L. Ed. 463; Eastern Building & Loan Ass'n v. Welling (C. C.) 116 Fed. 100, 105; In re Dutton's Estate, 208 Pa. 350, 57 Atl. 719, 720, 721. Owen was called upon in the suit against him to quiet title to set forth any adverse claim, legal and equitable, which he had; he could have pleaded and proved his claim of fraud in the first action, and under the rule in the federal courts he was estopped by the judgment against him there from pleading it thereafter.

The only other citations which have any particular pertinency to the matters here in issue are 23 Cyc. 1172, 1292, 1312. But the most pertinent statement in Cyc. upon this subject is at 23 Cyc. 1173e, in these words:

"A judgment is not a bar to the further prosecution of claims or demands which, although set up in the action, were excluded by the court or withheld from the jury, and therefore formed no part of the verdict or judgment, or which were withdrawn by plaintiff voluntarily before verdict, or on being required to elect between two or more causes of action joined in his declaration, or which for any reason were not submitted to the court or jury and not considered or passed upon, provided always that the claim withdrawn or withheld was a distinct and independent matter, legally detachable from the rest of plaintiff's case, and not an inseparable part of it."

This case falls within the proviso of the statement. The grounds and reasons for the plaintiffs' cause of action were not different causes of action from the plaintiffs' cause of action in their first suit, which it was optional for them to present in that suit, or to withhold for subsequent suits, as was the cause of action for damages in Kirven's Case;

they were not distinct and independent matters, legally detachable from the plaintiffs' cause of action in the first suit; on the other hand, they inhered in that cause of action, were inseparable parts of it, and when the plaintiffs permitted it to be decided without presenting them in due time in their original or first amended complaint, and proving them, they were as completely defeated as were the reasons and grounds they pleaded in their first complaint. Dutton v. Shaw, 35 Mich. 431; Thompson v. Myrick, 24 Minn. 4, 12, 14.

Not only this, but the refusal of the trial court in the first suit to permit the filing of the second amended complaint, when it was tendered for the first time after its announcement of its decision of the case, was in itself an adjudication either that the grounds or reasons therein stated were barred by the laches of the plaintiffs in failing to set them forth in either their original or first amended complaint, or that they were without legal merit. That decision was affirmed by the Supreme Court of the state, and it constitutes as conclusive a bar to the plaintiffs' relitigation of the claims set forth in the second amended complaint as the decree against them on evidence and trial would have made. If they had not pleaded these grounds at all in the first suit, they would have been barred by their laches in failing to plead them. They are equally barred because they failed to plead them until so late a time that their laches barred them from so doing.

[4] After a full discussion of the questions heretofore considered, counsel for the plaintiffs contends that the plaintiff Byron was not bound by the decree in the first suit, so that the parties to the two suits are not the same. But that suit was commenced on December 9, 1910. On March 16, 1911, Byron made a written contract with Cowles, Jr., the plaintiff in that suit, to purchase the leased premises and to pay $25 per acre therefor if the leases thereon were void, but that if they were valid he should be discharged from the obligation to purchase, and he agreed that in the event that the lessors, the plaintiff, Cowles, Jr., and his guardian, were entitled to have the leases canceled, he would procure the record cancellation at his expense. From the day that Byron made that agreement he was a privy with Cowles, Jr., bound by every act of his in the suit, and by every order and decree in that case. He was a purchaser pendente lite. The record has been carefully searched, and there is no escape from the conclusion that the parties and their privies in that first suit are identical with the parties and their privies in the suit here in hand.

Finally, it is contended that the judgment in the first suit is a nullity, because its effect is to maintain an alienation of an Indian's allotment when that was forbidden by the acts of Congress. If we concede that such an effect has been produced, the record of the first suit demonstrates the fact that it was the laches of the plaintiffs in failing to plead and prove their whole cause of action in that suit, which was the primary cause of that result, and also of the judgment in the state court, which they now claim accomplishes it. That judgment cannot be lawfully attacked collaterally here; and, if it could be, the acts and laches of the plaintiffs in the conduct of that suit would bar them from any relief therefrom.

The decree of the court below was right, and it is affirmed.