NATIONAL BANK OF COMMERCE IN ST. LOUIS, Appellant, v. MARYLAND CASUALTY COMPANY—No. 23939.

NATIONAL BANK OF COMMERCE IN ST. LOUIS, v. MARYLAND CASUALTY COMPANY, Appellant —No. 23940.

Division Two, March 19, 1925.

1. **APPEAL BOND: Suit on Substituted Bond: Defenses.** Where judgment for $700,000 was rendered against the principal in an appeal bond for $900,000, and thereafter by payments he reduced the judgment to $300,000, and gave a bond to the plaintiff in the sum of $350,000, expressly stipulating therein that his defenses, counterclaims and set-offs were limited to those which he could have made in an action upon the appeal bond, which was thereupon released, his defenses, when sued upon such substituted bond for $350,000, are limited to those thus expressly stipulated.

2. ———: **Judgment Collateral Security for Debt.** The judgment of a state court for $700,000 against the principal maker of an appeal bond is merely collateral security for the payment of the $700,000 of collateral notes upon which the judgment was based. If the corporate maker of the notes, held by the plaintiff as collateral security solely for a debt owing by such principal, pays the notes to plaintiff, such principal, at least upon the payment of costs, is entitled to have the judgment upon the notes satisfied.

307 Mo. Sup.—27

3. ———: ———: Set-Off: Counterclaim: Application of Collateral Security. The plaintiff bank recovered a judgment for $700,000 as damages for alleged conversion by Pierce of ten thousand shares of corporate stock, which had been deposited by another company with the bank as collateral security for the payment of its notes amounting to $700,000, and of which stock he had wrongfully obtained possession. He appealed from said judgment, and gave an appeal bond in the sum of $900,000, and said judgment was affirmed. Thereafter he reduced the judgment to $300,000, and the appeal bond was released, and in lieu thereof he gave another bond to the bank for $350,000, conditioned that all defenses, counterclaims and set-offs in an action thereon should be limited to those he could have pleaded to a suit on said appeal bond, and this is an action on said substituted bond, but only against the surety, the principal (Pierce) not having been made a party, and his application and that of the surety that he be made a defendant having been denied. Held, that, under the statute (Sec. 1233, R. S. 1919), the said principal maker of the bond, and his surety for him, was entitled to plead as a counterclaim that the bank had received $70,000 from a certain guarantor of the $700,000 notes, and $250,000 from the sale of bonds of another company placed with the bank as further collateral security of the notes, and that the bank could have sold other bonds, placed with it as further collateral security, for $450,000, and that the sums that were or could have been so realized were more than sufficient to pay off and discharge the judgment which stands in lieu of the said ten thousand shares of stock, and to pray for an accounting and marshalling of securities, and the trial court erred in striking said matters out of the answer, notwithstanding said defenses, set-offs and counterclaims were not pleaded in the said suit for conversion in which said judgment was rendered. If the bank became indebted to said judgment debtor because of money received from the guarantor of the notes, or realized from the collateral security, or which it should have realized, such debtor was and is, under the statute (Sec. 1292, R. S. 1919), entitled to have such sums set off against his indebtedness, and if the amount so received or realized exceeds his indebtedness to the bank he is entitled to judgment against it for the excess; and all such matters may be determined under a prayer for an accounting and marshalling of securities in the answer to a suit on the appeal bond, or on the substituted bond.

4. ———: ———: Res Adjudicata: Estoppel. Where the second suit is upon a different cause of action, but between the same parties as the first, the judgment in the former action operates as an estoppel in the latter as to every point and question which was actually litigated and determined in the first action; but it is not conclusive as to other matters which might have been, but were not, litigated or decided.

Bank of Commerce v. Maryland Casualty Co.

5. ———: Res Adjudicata: Estoppel: Judgment of Conversion: Set-Off and Counterclaim: Application of Collateral Security: Accounting. Where judgment for $700,000 as damages was rendered against defendant for converting to his own use ten thousand shares of the stock of a company, deposited with a bank as collateral security of notes of another company amounting to $700,000, and he gave an appeal bond and on appeal the judgment was affirmed, he is not estopped by said action or judgment, when sued on the bond, to plead and prove, as a set-off and counterclaim, that the judgment debt has been paid by money received from a guarantor of the notes or realized from other collateral securities, or to compel an accounting by the bank for the collateral securities paid. Such set-offs and counterclaims might have been pleaded and determined in the conversion suit, but were not, and because they were neither litigated nor decided they may be determined in the bank's suit on the bond. In fact, the two suits were different causes of action, and the defendant is not precluded from setting up as a defense to the second action matters not pleaded or adjudicated in the first. The judgment itself was a finality, but it was only collateral security for the payment of the notes, and if those notes have been paid by money received on other collateral securities pledged for their payment, the judgment debtor, when sued upon the appeal bond, is not estopped to assert that the judgment has been discharged, or to recover on his counterclaim any excessive payment.

6. ———: ———: Payment: Before Counterclaim to Suit on Appeal Bond. Where judgment in an action for conversion has been rendered against a defendant in a definite amount, he is not required, if within the same jurisdiction, to pay the judgment, before he can set up set-offs and a counterclaim to the same judgment creditor's suit on his appeal bond for the money received or that should have been realized by said creditor upon other collateral securities pledged by the maker of the notes for their payment.

7. ———: ———: Suit Against Surety Only: Right to Make Defense for Principal. Where the judgment is merely collateral security for the payment of notes, and suit is brought on the appeal bond against the surety as the only defendant, the surety is entitled to plead and show that the notes upon which the judgment was based have been paid by money received or that should have been realized from other collateral securities pledged for their payment; and, besides, it is error to deny the motion of such principal to be made a defendant in order that he may set up such defenses, or the application of the surety that he be made a party and be permitted to so plead.

8. INJUNCTION: Dissolution: Necessarily Implied. The necessary effect of a holding in the appellate court that the appellant was

not entitled to an injunction, and of an order affirming the judgment of the trial court refusing to grant him an injunction, is a dissolution of the temporary injunction.

9. ———: ———: **Damages in Federal Court: Expenses and Attorney's Fees.** Attorney's fees and expenses are not allowed as damages incurred in the dissolution of temporary injunctions granted in suits pending in Federal courts and assessable in such courts. Nor are such damages recoverable in a subsequent suit in the state court, unless the parties have specifically contracted and agreed in the bond or 'elsewhere that such expenses will be recoverable as damages upon the dissolution of the injunction.

10. **PENALTY: Vexatious Delay: Payment of Appeal Bond.** In a suit upon an appeal bond, wherein defendant is entitled to plead a set-off and counterclaim, neither he nor the surety can be penalized with attorneys' fees for delay in paying the face of the bond or the judgment.

Citations to Headnotes: 1, Appeal and Error, 4 C. J. 3423; 2, Trover and Conversion, 38 Cyc. 2112; 3, Appeal and Error, 4 C. J. 3423; Judgments, 34 C. J. 1338; Pledges, 31 Cyc. 844; Recoupment, Set-Off and Counterclaim, 34 Cyc. 656; 4, Appeal and Error, 4 C. J. 3423; Judgments, 34 C. J. 1312, 1322; 5, Judgments, 34 C. J. 1322; Trover and Conversion, 2112; 6 to 8, Appeal and Error, 4 C. J. 3423, 3426, 3156; 9, Courts, 15 C. J. 318; Injunctions, 32 C. J. 818; 10, Insurance, 890.

Appeals from St. Louis City Circuit Court.—*Hon. H. A. Hamilton*, Judge.

JUDGMENT IN PLAINTIFF'S APPEAL AFFIRMED.

JUDGMENT IN DEFENDANT'S APPEAL REVERSED.

*Edw. J. White* and *Geo. L. Edwards* for plaintiff.

(1) It was the duty of Pierce, since at least the judgment obtained by the bank against him in the circuit court for $700,000 was affirmed in this court, to have paid this judgment, and the duty of the casualty company to have paid the balance remaining due upon this judgment, at least from the date of the bond sued upon, June 8, 1920. It is equally obvious that at least after this judgment was affirmed by this court, if not since the date it was rendered by the circuit court, neither Pierce nor the casualty company could challenge its validity, either by claiming to have defenses thereto or counterclaims

Bank of Commerce v. Maryland Casualty Co.

against the bank which would reduce the amount thereof in whole or in part. All such defenses and claims were foreclosed by the judgment. It was the plain duty, therefore, of the trial court to strike out the defenses and counterclaims sought to be interposed to the collection of this judgment by the original and amended answer of the casualty company. Bank v. Pierce, 280 Mo. 614; Pierce v. Bank, 268 Fed. 487; Pierce v. Bank, 282 Fed. 100; Beloit v. Morgan, 74 U. S. 619; Allen v. City of Davenport, 132 Fed. 209; Miller v. Belzy Oil Co., 248 Fed. 83; Spratt v. Early, 199 Mo. 491; Mallory v. Patterson, 174 Mo. App. 605; City of St. Louis v. United Railways Co., 263 Mo. 387. (2) By the plain terms of their bond Pierce and the Casualty Company agreed to pay to the bank all damages sustained by it in procuring a dissolution of the *supersedeas* granted by the United States Circuit Court of Appeals. Attorneys' fees are universally considered a part of such damages, and it is undisputed upon the record that for this purpose the bank paid or contracted to pay its attorneys $25,000, and for their expenses $377.09. The court should have directed a judgment for this amount in favor of the bank. Elliot v. M. K. & T. Ry. Co., 77 Mo. App. 652; M. K. T. Ry. Co. v. Smith, 154 Mo. 300. (3) The bond sued upon is clearly not a bond filed in the Federal court, nor under the order of such court or the laws of the United States. This appears from the face of the bond. It also appears from the stipulation of the parties waiving the bond provided to be given by the order of the Federal court. Tullock v. Mulvane, 184 U. S. 497; American Surety Co. v. Schultz, 237 U. S. 150; Elliott v. M. K. & T. Ry. Co., 77 Mo. App. 652; M. K. & T. Ry. Co. v. Smith, 154 Mo. 300. (4) It is settled law in this State that the casualty company is (a) an insurance company within the meaning of Sec. 6337, R. S. 1919, and (b) the bond sued upon a policy of insurance within the meaning of that section. State ex rel. Peach Co. v. Bonding & Surety Co., 279 Mo. 535. (5) The evidence is overwhelming and undisputed and establishes beyond even a reasonable doubt that the casualty company at least vexatiously refused to pay the

balance due upon the State judgment, if it did not also vexatiously refuse to pay the damages sustained by the bank in procuring a dissolution of the *supersedeas* injunction granted by the United States Circuit Court of Appeals. Pierce v. Bank, 268 Fed. 487; Pierce v. Bank, 282 Fed 100; Stix v. Indemnity Co., 175 Mo. App. 171; Jaggi v. Prudential Ins. Co., 191 Mo. App. 384; Glover v. Ins. Co., 193 Mo. App. 489; Hicks v. Life Ins. Co., 196 Mo. App. 162; Todd v. Ins. Co., 203 Mo. App. 474; Brown v. Railway Passenger Ins. Co., 45 Mo. 221; Keller v. Home Ins. Co., 198 Mo. 440; Young v. Ins. Co., 269 Mo. 1; Fay v. Ins. Co., 268 Mo. 373.

*Boyle & Priest, Fordyce, Holliday & White, Judson, Green & Henry* and *Holland, Rutledge & Lashly* for defendant.

(1) The affirmative defenses which the defendant sought to interpose by its answer and its amended answer, and which were stricken out by the court, were valid defenses. Where an action is brought upon a contract the defendant may present any defenses that arise out of the contract or transaction set forth in the petition, or connected with the subject of the action, and also in an action arising on contract any other cause of action arising also upon contract and existing at the time of the commencement of the action. And the law is also equally well settled that if any two or more persons are mutually indebted in any manner and one of them commences an action against the other, one debt may be set off against the other, although such debts are of different nature. R. S. 1919, secs. 1232, 1233, 1292; Green v. Conrad, 114 Mo. 651; Himrod v. Baugh, 85 Ill. 435; Empire Transportation Co. v. Boggiano, 52 Mo. 294; Parle v. Ensign, 66 Kan. 50; Wyman v. Robbins, 51 Ohio St. 98; Robinson v. Shelton, 4 Ky. L. R. 996; Jarrett v. Martin, 70 N. C. 59; Seldner v. Smith, 40 Md. 602; Meyer v. Stockley, 3 Ill. App. 336. Equity regards as done that which ought to be done. 21 C. J. 200; Martin v. Martin, 250 Mo. 539; Pierce v. Bank, 268 Fed. 487. The claim made by plaintiff

that the claims set up by the defendant in its said answers had become *res adjudicata* in the conversion suit in the state court is without foundation, for the following reasons: (a) In the present case no plea of *res adjudicata* was made by the plaintiff. (b) The record shows nothing that ever occurred in connection with the conversion suit that would constitute ground for a claim of *res adjudicata* as to said defendant. (c) Outside of the record there are no facts that would show or tend to show that the matters involved in said defenses had ever been presented or attempted to be presented in the conversion suit, and nothing to show that the facts constituting said defenses existed at said time, or were known to the defendant. (d) Because defenses that arise out of and are based upon an independent cause of action are never adjudicated unless they are actually presented in a given cause. Pierce v. Bank, 268 Fed. 487; Harrison v. Remington, 140 Fed. 385; Russell v. Place, 95 U. S. 606; Aetna Life v. Board of Com., 117 Fed. 82; Cromwell v. County of Sac, 94 U. S. 351; Nesbitt v. Independent District, 144 U. S. 610; Belleville Ry v. Leathe, 84 Fed. 103. (2) The lower court did not err in refusing to allow plaintiff any recovery for alleged services and expenses of attorneys in connection with the interim injunction entered by the U. S. Circuit Court of Appeals in the case of Pierce v. Bank. Where an injunction bond is given in connection with or relative to an injunction proceeding in a Federal court, and provides for the payment of all damages and costs resulting by reason of such injunction, the word "damages" does not include or embrace attorneys' fees or attorneys' expenses, and there can be no recovery therefor under such a bond. Oelriches & May v. Williams, 15 Wall. 211, 21 L. Ed. 43; Tulloch v. Mulvane, 184 U. S. 516, 46 L. Ed. 657; M. K. & T. Railway Co. v. Elliott, 184 U. S. 530, 46 L. Ed. 673. (3) Plaintiff was not entitled to recover any damages or attorneys' fees in the present action on account of alleged vexatious refusal to pay. Because R. S. 1919, Sec. 6337, has no application to a bond of the character sued on herein. Said statute is

penal in its nature, and must be strictly construed, and does not include or embrace injunction bonds or appeal bonds. Mining Company v. Casualty Co., 162 Mo. App. 178; Grover v. Aetna Ins. Co., 200 S. W. 441.

DAVID E. BLAIR, J.—These cases are cross-appeals in the same case below. They were argued and submitted together. To avoid confusion, we will refer to the parties as "bank" and "casualty company."

The present case is a continuation of long-drawn-out litigation between the bank and Henry Clay Pierce. Facts, other than those necessary to be stated to understand the issues here involved, may be found in the following cases: National Bank of Commerce v. Pierce, 280 Mo. 614; Pierce v. National Bank of Commerce, 268 Fed. 487; Pierce v. National Bank of Commerce, 282 Fed. 100. Each of the three cases involved different phases of such litigation. Our writs of mandamus and in prohibition were also sought in connection with the present case. No opinions were filed by Court in Banc when such writs were denied.

The present case is an aftermath of the case of Bank v. Pierce, 280 Mo. 614. In that case the bank recovered a judgment against Pierce for $700,000 for the conversion by Pierce of $1,000,000 par value of the stock of Nashville Terminal Company, alleged to have been deposited with the bank by the Tennessee Construction Company, as collateral security upon three notes of said company, aggregating $700,000. Upon appeal said judgment was affirmed by this court (280 Mo. 614). Pierce, as principal, and the casualty company, as surety, executed an appeal bond in that case in the sum of $900,000.

After that judgment was affirmed by this court, Pierce filed suit against the bank in the United States District Court at St. Louis, seeking an accounting and a discovery and marshalling of securities held by the bank and an application thereof to the payment of the $700,000 notes of the Tennessee Construction Company, held by the bank. He prayed for an injunction to prevent the bank from suing out an execution to collect its $700,000

judgment against him and from bringing suit upon the appeal bond and for other relief. The federal district court denied such injunction and dismissed the bill filed by Pierce. He appealed to the United States Circuit Court of Appeals for the Eighth Circuit.

Pierce then applied to said Court of Appeals for an injunction to preserve the *status quo*. An order was there made restraining the bank for sixty days from taking steps to collect its judgment or bringing suit upon the appeal bond. Said order also provided that, if Pierce should pay off part of the $700,000 judgment, together with interest and costs, and reduce same to $300,000, within such period of sixty days, and should give a bond in the sum of $350,000 to secure the payment of the remainder of said judgment and any damages and costs the bank might sustain, by reason of the granting of said injunction, the bank would then be further restrained in the premises, during the pendency of the appeal in the Federal Court of Appeals.

Thereupon, Pierce paid over $467,000 upon such judgment, interest and costs, and reduced the unpaid portion of such judgment to $300,000. Thereafter, by agreement between Pierce and the bank, the giving of the $35,000 bond, required in the order of the Federal Court of Appeals, was waived, and Pierce was permitted to give to the bank a bond in the same amount, and the bank waived the giving of the bond required in the order of the federal court of appeals. The casualty company signed said bond as surety. Thereupon the $900,000 appeal bond was released by the bank. The $350,000 bond thus given is the one sued on in this case.

In due time the Federal Court of Appeals handed down its opinion affirming the order of the district court in so far as it denied an injunction against the bank, and reversing that part of the order which dismissed Pierce's bill. It remanded the case for further proceedings in the district court. That opinion is reported in 268 Fed. 487. Thereafter, the bank instituted the suit which resulted in the appeals now before us. The casualty company was

made a party defendant, but Pierce was not joined as such.

In substance, the petition alleged the execution of the $350,000 bond, and the aforesaid facts relating to the execution and release of the $900,000 appeal bond, and that the casualty company had breached such $350,000 bond by failure to satisfy and pay the remainder of the $700,000 judgment. The bank prayed judgment for the penalty of the bond. Recovery was asked for the unpaid portion of the judgment in the sum of $300,000, and interest thereon, and for $25,377.03, as attorneys' fees and costs incurred by the bank in dissolving the said injunction, together with a penalty of ten per cent upon the sum of the foregoing items, by way of penalty for vexatious refusal of the casualty company to pay, and for reasonable attorneys' fees in this case, in the sum of $25,000.

The case was tried below without the intervention of a jury. The trial judge found for the bank and entered judgment in its favor for the penalty of the bond, such judgment to be satisfied upon the payment of the sum of $337,923.09, which represented the unpaid balance on the $700,000 judgment, together with interest thereon. The trial judge denied the bank's claim for attorney's fees and costs in dissolving the injunction, as well as the penalty for vexatious refusal to pay and attorneys' fees in this case.

Thereupon the bank appealed from said judgment, in so far as it denied damages incurred in dissolving the injunction, penalty for vexatious refusal to pay and attorneys' fees in this case. The casualty company appealed from the judgment for the penalty of the bond. The bank's appeal is numbered 23,939 in this court, and the appeal of the casualty company is numbered 23,940. We will first consider the appeal of the casualty company.

Numerous assignments of error are made, but they all depend upon one main proposition, to-wit, whether the matters and things involved in the suit of Pierce against the bank, pending in the Federal district court,

constitute any defense in the present suit of the bank against the casualty company and, as incidental to such main proposition, whether the casualty company is entitled to make such defenses or is entitled to have Pierce brought in as a party defendant, in order that he may make such defenses, or whether Pierce is entitled to be made a party defendant upon his own application. This requires the statement of further facts. Before going into such facts, however, a further history of the litigation in the federal court should be outlined briefly, in order to make the instant case entirely clear.

As above stated, the present suit was instituted after the Federal Court of Appeals entered its order affirming the action of the district court in denying an injunction and reversing the order of the district court in dismissing the bill of Pierce. Thereupon, Pierce filed an amended bill in the Federal district court, setting up the payment on the state court judgment, interest and costs of $467,141.67, the pendency of the case at bar and other matters not necessary to notice here, and renewed his prayer for an injunction to prevent the bank from prosecuting its suit upon the $350,000 bond. His prayer was again denied, and again he appealed to the Federal Court of Appeals and there again prayed for a temporary injunction during the pendency of such appeal. His prayer was again denied.

It appears that the casualty company, by appropriate notice to the bank, under Sections 12687, 12688 and 12689, Revised Statutes 1919, required the bank to institute suit against Pierce upon the bond here sued on. Pierce removed that suit to the United States District Court, and there filed a cross-complaint alleging the same matters involved in his prior suit in the Federal district court against the bank. From an order denying his application for an interlocutory injunction and striking out certain parts of his cross-complaint, Pierce appealed to the Federal circuit court of appeals. There it was held that the order, striking out portions of the cross-complaint, was not a final judgment and that no appeal

was allowable therefrom. It was again held that Pierce was not entitled to an injunction upon the facts alleged in this cross-complaint, and the order of the federal district court denying such injunction was affirmed. This opinion is reported in 282 Fed. 100.

The matters here complained of as error were raised in various ways. Portions of the answer and the amended answer of the casualty company were stricken out. Its motion to require Pierce to be made a party defendant was overruled. The application of Pierce to that end was likewise denied. One part of the answer so stricken out set up the matters involved in the case of Pierce v. Bank, pending in the Federal district court and pleaded by Pierce in that case. In substance, the defenses sought to be made there were that the 10,000 shares of the capital stock of the Nashville Terminal Company, found to have been converted by Pierce, had been held by the bank as collateral security for the payment of the $700,000 in notes of the Tennessee Construction Company and that the $700,000 state court judgment was thereafter merely collateral security upon the same notes; that the bank held, as additional collateral security upon said notes, $750,000 par value of the bonds of the Tennessee Central Railroad Company and $250,000 par value of the bonds of the Nashville Terminal Company; that all of said collateral, subject to the pledge of the bank, had been pledged and sold to Pierce by Tennessee Construction Company. It appears, not from the part of the answer stricken out, but elsewhere, that the Tennessee Construction Company had pledged all of the collateral to Pierce to secure the payment to him of its note or notes for $600,000, subject to the pledge of such securities to the bank, and that, upon default in payment of said note, Pierce sold the collateral and became the purchaser thereof.

It was then alleged that Pierce contended in the Federal district court that the payment of said three notes, aggregating $700,000, was guaranteed by one J. C. Van Blarcom, deceased, and that the bank had collected about $70,000 (stated elsewhere to have been

$86,000) from the estate of said Van Blarcom and had sold the $250,000 of Nashville Terminal Company bonds for $225,000, and that the bank should and could have sold the $750,000 of Tennessee Central Railroad Company bonds for the sum of not less than $450,000; that the sums so realized and which should and could have been realized by the bank from said securities and from said guaranty of Van Blarcom were more than sufficient to pay off and discharge the amount due on the three notes of the Tennessee Construction Company to the bank and that there was due to said Pierce on account of his right to succession to said collaterals a large balance without the payment of the $700,000 state court judgment, which stands in lieu of the 10,000 shares of Terminal Railroad stock; that Pierce prayed for an accounting and discovery and marshalling of securities. On account of such facts the casualty company alleged Pierce has a good and meritorious defense to the suit of the bank upon the $350,000 bond, and the casualty company pleaded in defense all of such facts, alleged by Pierce in the Federal district court, in behalf of Pierce; that the casualty company believed them to be true.

The opinion filed by the Federal Court of Appeals (268 Fed. 487) was then set out. It was alleged that the same matters and things in controversy in this suit are in controversy in the prior suit in the Federal district court, and that the Federal district court has the prior and exclusive jurisdiction to hear and determine said matters.

The prayer of said amended answer so stricken out was as follows:

"This defendant prays judgment whether the plaintiff, by reason of the facts herein set forth, is entitled to any judgment; whether this suit should not abate or be dismissed, because the said United States District Court has the prior and exclusive jurisdiction of the matters and things involved herein; and for such other orders and judgments as may seem meet to this court."

The foregoing is the substance of the matters stricken out of paragraph thirteen of the amended answer.

Thereafter, as indicated, the casualty company unsuccessfully moved to have Pierce made a party defendant and Pierce himself unsuccessfully applied to be made a party defendant. Exceptions to adverse rulings were properly saved by term bills of exceptions, which were incorporated in the general bill of exceptions.

The first question which naturally suggests itself for our consideration is whether the allegations stricken out of the amended answer and pleaded as a defense in behalf of Pierce constituted a good defense on the part of Pierce. We will then necessarily have to consider whether the casualty company could make such defenses. The allegations of said answer were stricken out on the ground that such allegations, if true, "do not constitute separately or collectively any defense to plaintiff's suit, and do not constitute, separately or collectively, any counterclaim or set-off to plaintiff's suit." The amended answer set out the allegations of Pierce's bill in the Federal district court and pleaded same on behalf of Pierce as defenses in this case. For the purposes of this appeal such allegations must be taken as true.

The defenses, counterclaims and set-offs which may be made by Pierce in the suit upon the $350,000 bond, are limited to those which he could have made in a suit upon the $900,000 appeal bond. It is expressly so stipulated in agreements 1, 2, 3 and 4 of said $350,000 bond.

The casualty company contends, and we think it must be conceded, that the state court judgment for $700,000 against Pierce was merely collateral security for the payment of the $700,000 notes of the Nashville Terminal Company. The Federal Court of Appeals so found. In 268 Federal Reporter at page 491, that court said: "The facts which have now been stated are alleged in plaintiff's complaint. If they are true, and in determining the sufficiency of the complaint they must be so considered, the bank holds as collateral security for the $700,000 debt of the construction company to it, the $700,000 judgment against the complainant," etc.

It cannot be doubted that, had the construction company paid its $700,000 in notes to the bank, Pierce would

have been entitled, at least upon the payment of costs, to have had the $700,000 judgment against him satisfied, because of such payment, unless the bank had been thereafter entitled to hold the 10,000 shares of the stock of the Nashville Terminal Company (and in lieu thereof the $700,000 judgment) as collateral security for some other debt due to it. The pleadings in this case never got to the point where the bank needed to make any such claim, but it appears from the opinion in Pierce v. Bank, 268 Fed. 487, that the bank was making the claim that the 10,000 shares of stock, converted by Pierce (and hence the $700,000 judgment), together with other securities, were held by it as collateral security for other notes, in addition to the notes for $700,000 of the construction company. That contention is not involved here and need not be further noticed.

It was not held by this court in Bank v. Pierce, 280 Mo. 614, that Pierce could not have made in that case, if he had there sought to make them, the defenses here sought to be made by the casualty company in portions of its amended answer which were stricken out. What we there held was, that "the present record does not disclose any facts which would go to show that the trial court exercised other than a very sound discretion in refusing permission to file the amended answer under the conditions presented in the case at bar."

Had Pierce pleaded and shown in the suit for conversion of the 10,000 shares of the terminal company's stock that the bank, prior to the trial, had received payment of the $700,000 in notes of the construction company, either by application thereto of other collateral or otherwise, and that the bank then held no other indebtedness, to which such stock and securities were properly held by it as collateral, the bank would not have been entitled to a judgment for more than nominal damages for the conversion of said 10,000 shares of stock by Pierce. In other words, the matters and things set up by the casualty company in its amended answer in the case at bar would have constituted a good defense against the

bank's claim for substantial damages in the conversion suit, had such matters been timely and properly pleaded and proven by Pierce in that suit.

Measured by Section 1233, Revised Statutes 1919, the matters pleaded by Pierce in the Federal district court and sought to be interposed as a defense by the casualty company in this case, are appropriate subjects of counterclaim by Pierce against the cause of action stated in the petition in this case. The petition states a cause of action upon contract and the causes of action so pleaded in the amended answer also arose upon contract and such claims were in existence at the time this action was commenced. Again, they are connected with the subject of the cause of action stated by the bank.

If Pierce is correct in his contention that dividends received by the Van Blarcom estate, and proceeds from the sale of the $250,000 par value of bonds, were actually received by the bank and further that proceeds from the $750,000 par value of bonds should and could have been realized by the bank and that Pierce is the owner of all such collateral, subject only to the pledge thereof to secure the payment of the $700,000 of construction company notes, then the bank must account to Pierce therefor, and such facts furnish the basis of the counterclaim by Pierce.

If the bank became indebted to Pierce because of any money so received or which it should have realized out of such collateral, then clearly, under Section 1292, Revised Statutes 1919, Pierce was and is entitled to have such indebtedness of the bank to him set off against the indebtedness due the bank from Pierce, regardless of how such items of indebtedness arose.

The next question is whether it is now too late for Pierce to make these defenses, if and when sued upon the $900,000 appeal bond given in the state conversion suit, in lieu of which the $350,000 bond now stands. This question was thoroughly and ably considered by Judge SANBORN in Pierce v. Bank, 268 Fed. 487, and the Federal Court of Appeals there held that, upon the facts alleged

Bank of Commerce v. Maryland Casualty Co.

in Pierce's bill in the district court, which, as we have said, are substantially the defenses sought to be made in his behalf by the casualty company in this case; Pierce was entitled to have an accounting and a discovery and marshalling of securities and a determination of whether or not he then owed the bank anything because of the rendition against him òf the judgment in the conversion suit. At page 491, Judge SANBORN said:

"The averments of this complaint on their face bring it far within the jurisdiction óf a court of equity to marshal mortgaged or pledged securities and to decree an accounting for and application thereof to the payment of the debt they secure, to adjudge a redemption of pledged or mortgaged securities, to fix the terms upon which such redemption may be made, and to decree and enforce a trust at the suit of one having title or interest in property that is in the possession or control of another. [Hubbard v. Tod, 171 U. S. 474,478, 495, 504, 43 L. Ed. 246; Manhattan Trust Co. v. Sioux City & N. R. Co., 65 Fed. (C. C.) 559, 568; Benedict v. Moore, 76 Fed. (C. C.) 472; Dibert v. Edw. D'Arcy, 248 Mo. 617, 647, 154 S. W. 1116.] All the controversies between the parties suggested by this complaint may be heard and determined in equity in a single suit, all their rights on account of all the alleged collaterals may be adjudged by a single decree, and during the progress of the litigation, as well as at its close, the acts of the parties may be controlled and directed by appropriate orders of the chancellor."

It is contended by the bank that the Federal Court of Appeals held that Pierce must pay the state court judgment before he could have the accounting and marshalling of securities he prayed for in his bill in the Federal district court. We think such contention results from a misconception of Judge SANBORN's opinion. That learned judge said:

"It is true that in the absence of the injunction the plaintiff must pay the judgment against him before his claims to the accounting for the $1,000,000 of bonds and

307 Mo. Sup.—28.

the Van Blarcom dividends can be adjudicated. But that fact does not entail an irreparable loss or injury upon him, because the bank is solvent and at the end of the litigation will pay, with interest and costs, the amount which the court shall adjudge it to owe. It is no ground for an injunction against the enforcement of a judgment that the defendant has unadjudicated claims for more than the face of the judgment against a solvent plaintiff, who is a resident and is within the jurisdiction of the court; and that is the case that this record presents.''

That court held that there were no allegations in the bill and no showing made that the bank was insolvent and unable to satisfy any judgment which might be rendered against it. It is apparent that the court then had in mind the fact that Pierce might be compelled to pay the state court judgment before he could hope to get a final judgment in his own case in the district court. The court plainly indicated that such injunction would have been granted in case the bank had been insolvent and Pierce had not had full and adequate recourse against said bank in the event the district court found for him. In ordinary course, the bank would have collected its judgment before Pierce could have secured a judgment in the district court. Had the Federal Court of Appeals regarded the payment of the state court judgment by Pierce as a prerequisite to the prosecution of his accounting suit in the district court, it is scarcely conceivable that the order of the district court dismissing the bill would have been reversed.

But the bank contends that Pierce could not make the defenses now sought to be made for him by the casualty company, because all such defenses were foreclosed by the judgment in the conversion suit, in which they should have been pleaded as a defense, and, as he did not make such defenses in that case, he is now estopped in any case and in any court to seek the relief to which he contends such defenses entitle him.

This contention was disposed of adversely to the bank's contention in Pierce v. Bank, 268 Fed. 487, be-

ginning at page 495. Judge SANBORN there so fully and
ably discussed the point that we feel justified in quoting
that portion of his opinion in full. · Because the reader
will have access to the reported opinion, we omit many
of the cases cited by him. He said:

"Counsel challenge the complaint on another
ground: They contend that the complainant is estopped
from maintaining its suit in equity for a discovery and
accounting regarding the $1,000,000 of bonds pledged to
the bank and to Pierce, or regarding the dividends it re-
ceived from the Van Blarcom estate, because he did not
plead or prove his claims therefor in the action in the
state court by the bank against him for his conversion
of the 10,000 shares of stock of the terminal company,
which resulted in the $700,000 judgment against him.
But the rules of law by which this position must be tried
are:

"First. Where the second suit is upon the same
cause of action and between the same parties as the first,
the judgment in the former is conclusive in the latter
as to every question and issue which was or might have
been presented and determined in the first suit." [Citing
cases.]

"Second. When the second suit is upon a different
cause of action, but between the same parties as the first,
the judgment in the former action operates as an estoppel
in the latter as to every point and question which was ac-
tually litigated and determined in the first action; but it
is not conclusive relative to other matters which might
have been, but were not, litigated or decided." [Citing
cases.]

"Third. Where the record is such that there is or
may be a material issue, question, or matter in the second
suit upon a different cause of action which may not have
been raised, litigated, or decided in the former action, the
judgment therein does not constitute an estoppel from
litigating that issue, question, or matter, unless by plead-
ing or proof the party asserting the estoppel establishes
the facts that the issue, question, or matter in dispute

was actually and necessarily litigated and determined in the former action." [Citing cases.]

"Fourth. The test of the identity of the causes of action is the identity of the facts essential to maintain them." [Citing cases.]

"Fifth. While the failure of a defendant to allege and prove facts purely defensive to an issue on trial between him and the plaintiff renders such matters *res adjudicata* after judgment, and estops him from again presenting them (1 Van Fleet on Former Adjudication, sec. 198), when defensive facts also constitute an affirmative cause of action against the plaintiff, the defendant has the option to interpose them as a defense, or to reserve them for an independent or cross-action. If he refrains from presenting them as a defense, the judgment in the action against him does not bar nor adjudicate his affirmative cause of action upon them, and he is free subsequently to maintain it." [Citing cases.]

"Let us measure the alleged estoppel of the plaintiff to maintain this suit by these rules. Counsel cite, to sustain that estoppel, Miller v. Belvey Oil Co., 248 Fed. 83, 160 C. C. A. 223, and Allen v. City of Davenport, 132 Fed. 209, 220, 65 C. C. A. 641, 659. But the decisions and opinions in those cases are inapplicable to this case, because in those cases the first and second suits were between the same parties and upon the same causes of action, respectively, and were governed by the first of the above rules, while the suits in this case are upon different causes of action, and the first rule is inapplicable to them. There is no identity in the facts necessary to the maintenance or defense of the causes of action against Pierce for conversion of the 10,000 shares of Terminal stock, and the facts determinative of Pierce's cause of action against the bank for an accounting and recovery of the proceeds of the $250,000 of the mortgaged bonds of the terminal company, or for a redemption of the $750,000 of the bonds of the railroad company, or for an equitable application of the dividends from the Van Blarcom estate. The facts necessary to the maintenance of the former suit

were the pledge of 10,000 shares of Terminal stock to the bank before they were pledged to Pierce on November 17, 1908, the appropriation of them or their proceeds to his own use by Pierce, and the value of the stock. None of those facts is indispensable to the maintenance of the suit in hand for a discovery of and accounting by the bank for the bonds and dividends here in question. The subjects and objects of the two suits, the facts indispensable to their maintenance or defense, but the relief sought therein are not only not identical, but are so radically different that neither could be maintained upon the facts which might sustain the other. This case, therefore, falls under the second rule, and the complainant is estopped from maintaining no position which was not actually litigated and determined in the action in the state court.

"Counsel cite, however, Beloit v. Morgan, 7 Wall. 619, 621, 622, 19 L. Ed. 205, in which Morgan had sued the town of Beloit and obtained a judgment on some of the coupons upon some of a certain issue of bonds, after a trial of the issue as to the validity of the bonds made by the answer of the town. Thereafter the town brought a suit in equity against Morgan, and claimed therein that all the bonds of that issue were invalid, for the same reasons alleged in its answer in the first suit, and prayed that Morgan might be enjoined from maintaining any action upon any of them, and that those he held might be surrendered and adjudged void. The court held that the town was estopped from maintaining the suit by the former judgment. Counsel also cite Gardner v. Buckbee, 3 Cow. (N. Y.) 120, 15 Am. Dec. 256, wherein Gardner bought a vessel of Buckbee and gave him two notes for the purchase price. Buckbee sued on one of them. Gardner defended on the ground that the sale was fraudulent and there was no consideration for the note. The issue was tried, and Buckbee recovered a judgment. He then sued Gardner on the second note, and Buckbee defended on the same ground of fraud in the sale and want of consideration he presented in the first action, and the

court held he was estopped by the judgment in the first action.

"The decisions in these cases rest upon the facts that the two suits in each case were between the same parties upon different causes of action, and the issues in the second suits had been actually litigated and determined in the first suits. They fall under the declaration of the second rule, that in such cases the judgment in the first suit is conclusive as to every point and question actually litigated. But the complaint in this case does not disclose, nor has the bank pleaded or proved, that any of the points, questions, or issues determinative of the equitable right of the complainant to the accounting by the bank for the bonds or dividends, or to the return of the $750,000 of the bonds of the railroad company, was actually litigated or adjudged in the action in the state court, and it is governed by that part of the second rule which declares that the judgment in the first action is not conclusive as to other matters than those actually litigated and decided, which might have been, but were not, litigated or decided in the first suit. For these reasons, and for others, such as the fact that the complainant did not learn of the sale of the $250,000 of the Terminal bonds by the bank until after the judgment in the state action had been entered in the trial court, and that the fact relative to the pledges and liens in question in this suit may not have constituted a defense to the action against Pierce for the conversion of the Terminal stock at the time that issue was pending in the trial court, the conclusion is unavoidable that the complainant is not estopped by the judgment in that action from maintaining this suit and securing in this court such relief as, after pleadings and proofs, the merits of the case may demand."

Judge SANBORN was clearly correct in holding that the same cause of action was not involved in the conversion suit as was involved in the matters and things alleged in Pierce's suit in the district court. If they are different causes of action (and they are), Pierce would

not be precluded from setting up those matters as a defense or as a basis of counterclaim or set-off in this case, because they were not pleaded or adjudicated in the conversion suit.

But the bank contends that, to permit Pierce (or now the casualty company) to make such defenses in this case, is to permit him tó say that the state court judgment for $700,000 should not have been rendered or should now be reduced and that this would constitute a challenge of the validity of such judgment. Not at all. In paragraphs three, four and five of its amended answer, the casualty company admits the rendition of such judgment and an appeal therefrom and that such judgment was affirmed by this court. Such admission is tantamount to an admission of the finality and unassailability of such judgment. Judge SANBORN evidently had this in mind when he said that the bank held an unassailable judgment against Pierce.

But that judgment was not a judgment for the payment of money to the bank by Pierce, absolutely and in any event. Counsel seem to lose sight of the fact that such judgment was merely collateral security for the payment of the $70,000 construction company notes. The defenses sought to be made by the casualty company are consistent with that judgment, as thus characterized and understood, and are not inconsistent with the existence of such judgment and its validity and enforceability for the purpose for which it was rendered.

No sufficient reason appears to us why Pierce himself is not entitled to have his liability upon the $900,000 appeal bond (and therefore upon the $350,000 bond in suit) and his right to an accounting and discovery and marshalling of securities determined in one and the same action and to have any sums applied to the payment of the $700,000 notes of the construction company which the court might determine should have been applied thereto by the bank.

It must now be determined whether Pierce's surety, the casualty company, can make for Pierce the defenses in

this case which we hold Pierce himself as party defendant could have made. We think the casualty company is entitled to make them.

The casualty company relied upon the case of Green v. Conrad, 114 Mo. 651. Unless that case can be distinguished from this case, it is controlling. The bank contends that it can be so distinguished. In that case Green was assignee of the Packet Company. In October, 1880, Ward and others had obtained three judgments in St. Louis on behalf of the Packet Company against Davidson and others, aggregating over $25,000, for misappropriation of corporate property. Upon appeal those judgments were affirmed. Three appeal bonds had been given, and Green, as assignee of the Packet Company, brought suit upon such bonds against the sureties, Conrad and the administrator of Lehman. Davidson had died. His executor was not made a party defendant. The three suits were consolidated for trial.

On motion of Johnson, executor of Davidson's estate, he was made a party defendant in the consolidated case and filed answer. The sureties set up the fact that Davidson, in October, 1884, in the State of Minnesota, had procured a judgment against the Packet Company for over $45,000 upon certain notes, and that Davidson thereafter sued the Packet Company upon such judgment in St. Louis and, in May, 1887, procured a judgment for over $51,000, which was unsatisfied. The sureties asked that such judgment be allowed as a set-off or counterclaim in the consolidated suits upon the three appeal bonds. Green moved to strike out such defense, and the trial court overruled his motion. Davidson's executor set up a similar defense, and the court likewise overruled Green's motion to strike it out.

One of the questions considered by this court upon appeal was the right of the sureties to avail themselves of the judgment of Davidson against the Packet Company, when sued as sureties upon the appeal bonds. This court held that such defense could be pleaded both by Davidson's executor and the sureties upon the ap-

peal bond and, following and approving Himrod v. Baugh, 85 Ill. 435, held that, where the joint debt of the principal and the sureties is a mere security for the separate debt of the principal, the right of set-off will be allowed the sureties.

We do not think the fact that the claim, pleaded as a set-off in that case, was a judgment, can make any difference or distinguish Green v. Conrad, from this case. In that case the principal's executor was allowed to come in as a party defendant and such executor consented that the sureties might make the defense they did make. While the principal on the bond was not made a party defendant in this case, he attempted to come in and the casualty company sought to bring him in. Both were unsuccessful. If the assent of the principal for the surety to make his defense be deemed essential in this case, such consent is shown by the record.

It is true that the Packet Company was insolvent. The bank urges that fact as one distinguishing the two. cases. This court mentioned that fact, but apparently it was not controlling in Green v. Conrad. The same result would doubtless have been reached had the Packet Company been solvent.

The bank argues that the sureties in Green v. Conrad, would not have been permitted to plead as a set-off the causes of action which resulted in Davidson's judgment against the Packet Company. This contention is based upon the argument of *res adjudicata*, which we have above considered and disallowed.

In one particular this is a stronger case than Green v. Conrad. There the appeal bonds were given to secure the payment of a judgment for money, payable without any contingency. Here the judgment in the conversion suit was merely collateral security to the construction company notes. The liability of Pierce to pay such judgment was contingent and depended upon the failure of the construction company to pay said notes.

Other cases are cited and discussed in the briefs, but we will not lengthen this opinion unnecessarily by

discussing them. We are satisfied with the controlling authority of Green v. Conrad, and under that authority hold that the casualty company is entitled to make the defenses it sought to make and that the trial court erred in striking out paragraph thirteen of the amended answer of the casualty company. Upon re-trial the right of the bank to continue the prosecution of the suit in view of the prior suit in the federal court and the liability of the casualty company upon the bond should be determined upon the truth of the allegations stricken out of the amended answer.

The rulings of the trial court in denying the motion of the casualty company to have Pierce made a party defendant and in denying Pierce's own application to come in as party defendant, are also assigned as error. In Green v. Conrad, supra, this court sustained the trial court's action in permitting the principal on the bond to come in as a defendant and gave strong reasons why such action was proper. We think such reasons are controlling here, and we hold that the court erred, both in refusing to have Pierce brought in and in denying him the right to come in as party defendant.

In view of what we have held and also in view of conclusions reached upon other phases of the case, we deem it unnecessary to consider the propriety of the court's action in striking out paragraph nine of the amended answer. Some matters of fact therein alleged are alleged elsewhere in the amended answer. Some of the allegations are mere conclusions of the pleader. We believe we have so expressed our views of the case in this opinion that the trial court will have no difficulty in shaping the pleadings upon re-trial, if a re-trial occurs.

The foregoing disposes of all points necessary to be considered in connection with the appeal of the casualty company in case No. 23940.

The bank's appeal in case No. 23,939 involves the correctness of the trial court's ruling with respect to the claim of the bank for $25,377.03 for attorneys' fees and expenses incurred in dissolving the temporary injunc-

tion granted by the Federal Court of Appeals in the case of Pierce against the bank. The right of the bank to such allowance was embodied in Instruction No. 2, asked by the bank. The court refused this instruction and the bank excepted.

There is no merit in the casualty company's contention that the Court of Appeals did not dissolve such injunction. It did not order such injunction dissolved in express terms, but such was the necessary effect of its finding that Pierce was not entitled to an injunction and of its order affirming the action of the district court in refusing to grant such injunction. If such injunction was not dissolved, it must have been in full force when the bank instituted the present action upon the appeal bond to enforce collection of the unpaid balance due upon the $700,000 judgment. If it was in force, the institution and prosecution of this suit would have been in clear violation of the express terms of the injunction and the bank would have been in contempt of the Federal court. It is unlikely that able counsel for the casualty company would have overlooked such an easy and ready way to halt proceedings in the present case.

Attorney's fees and expenses are not allowed as part of the damages incurred in the dissolution of temporary injunctions granted in suits pending in the Federal courts and assessable in such courts. In support of this proposition the casualty company relies upon Oelrichs v. Spain, 15 Wall. 211; Tullock v. Mulvane, 184 U. S. 497; M. K. & T. Ry. Co. v. Elliott, 184 U. S. 530.

The bank concedes that such is the Federal rule. It seeks to avoid the force of such rule by contending that, by the bond in suit, Pierce and the casualty company contracted to pay damages and costs, which included attorneys' fees and expenses, independently of any allowance thereof by the Federal court, and that because the suit was brought upon the bond in the state court the rights of the parties must be determined by the state rule and not by the Federal rule.

Section 5 of the bond provided that said bond should "secure to the bank the payment of any and all damages and costs sustained by the bank as a result of the granting of the injunction by the United States Court of Appeals for the Eighth Circuit, in the case of Henry Clay Pierce v. National Bank of Commerce in St. Louis, No. 5587."

A provision of this sort was required by the Federal Court of Appeals to be written into the injunction bond provided for by its order. It was there required that such injunction bond should be so conditioned as to secure the payment of "all damages and costs in this case." In the nature of things, that court could not require the bank to release its $900,000 bond, even though the judgment it was given to secure was ordered to be reduced by part payment to $300,000 before the injunction should become effective. It was this feature and the provisions to preserve the rights of the bank in respect to the appeal bond which were taken care of when the bond in suit was executed instead of the bond required in the order of the federal court of appeals. In other respects, the bond in suit met all of the requirements of the order of that court.

The concluding paragraph of the bond in suit provided that if Pierce "shall well and truly pay to said bank  .  .  .  all damages and costs which may accrue or become due to said bank on account of the injunction and restraining order granted  .  .  .  then this obligation shall be null and void," etc.

Reading the two provisions together, it seems clear that Pierce and the casualty company only bound themselves to pay such damages and costs as were incidental to an injunction granted by the Federal Court of Appeals, that is, such damages as that court, under its rulings, would assess in an appropriate proceeding for the allowance thereof.

The parties were contracting in reference to the situation resulting from the granting of an injunction by a Federal court. Unless they appropriately specified otherwise, the contract should be construed with reference

to the practice in the Federal courts. That practice did not permit the assessment of attorneys' fees and their expenses upon the dissolution of a temporary injunction. The construction of the bond contended for by the bank is strained and unnatural.

The assessment of damages upon the dissolution of an injunction of the Federal court involves a federal question and the decisions of the federal courts are controlling. Such assessment is not controlled by the Missouri statute, nor by decisions of this State in cases where temporary injunctions have been granted and dissolved by the courts of this State.

The bank cites Elliott v. M. K. & T. Ry. Co., 77 Mo. App. 652, and M. K. & T. Ry. Co. v. Smith, 154 Mo. 300. Those cases apparently hold as the bank now contends; but the trouble is that the first case cited was reversed, and the latter case is in effect overruled by the Supreme Court of the United States in M. K. & T. Ry. Co. v. Elliott, 184 U. S. 530.

The rule there laid down is controlling here, and it follows that the trial court did not err in refusing the bank's instruction numbered 2, and in denying its claim for damages and attorneys' fees incurred in dissolving the injunction.

In view of the conclusions already reached, it is scarcely necessary to notice the bank's contention that the trial court erred in denying its claim for penalty and attorneys' fees in this case for vexatious refusal of the casualty company to pay the bond. If, in addition to the judgment in favor of the bank for the penalty of the bond, the trial court had included such items in its judgment, they would necessarily have fallen with that judgment.

Aside from that and in view of all we have said concerning the right of the casualty company to make for Pierce the defenses referred to, it is manifest that the bank, *on the record now before us,* was not entitled to recover for such items. [Non-Royalty Shoe Co. v. Assurance Co., 277 Mo. 399; State ex rel. v. Allen, 243 S. W. (Mo.) 839; Patterson v. Insurance Co., 174 Mo. App.

37; State ex rel. Continental Life Insurance Co. v. Allen, 262 S. W. (Mo.) 43.] In the last case cited we said:

"An insurance company's right to resist payment upon one of its policies cannot be determined by the facts as found by the jury, but must be determined by the facts as they reasonably appeared to it before the trial. It has the right to refuse payment and to defend a suit with all the weapons at its command, so long as it has reasonable ground to believe its defense is meritorious. It is only when it persists in its refusal to pay the policy after it is aware that it has no meritorious defense that it becomes subject to penalties for vexatious delay."

As a re-trial upon the facts might develop a situation where the assessment of damages and attorneys' fees for vexatious refusal to pay the bond might become proper, the trial court should be left free to consider the claim upon its merits.

We regret the length of this opinion. The earnestness and industry of counsel have made it necessary. It would seem that all of the issues involved here could well have been settled in the case pending in the Federal district court. In fact, we have information outside of the record that a final judgment has already been entered in that court upon the issues there involved, which are very likely the identical issues involved here. An appeal was taken in that court, which, we understand, is set for argument in the Federal Court of Appeals at an early day. We hope that our labors in preparing this opinion may be of some value to the bench and bar of the State, if not of material aid in solving the difficulties in which the parties here find themselves.

In so far as case No. 23,939 is concerned, the judgment below is affirmed. Upon the appeal of the casualty company, in case No. 23,940, the judgment is reversed. The case as a whole is remanded for further proceedings, in accordance with the views herein announced. All concur.