James Lyle JONES, Respondent,

v.

FARM BUREAU MUTUAL INSURANCE COMPANY, Appellant.

No. 22260.

Kansas City Court of Appeals.

Missouri.

Oct. 3, 1955.

Ike Skelton, Newton R. Bradley, Lexington, for appellant.

A. Lamkin James, Marshall, Wm. Aull, Jr., Lexington, Darold W. Jenkins, Marshall, for respondent.

DEW, Presiding Judge.

Plaintiff brought this action in the Circuit Court of Saline County, Missouri, to recover under an insurance policy issued to him by the defendant for the loss of an automobile by fire. He also asked for damages and for attorneys' fees. Upon a change of venue the case was transferred to Lafayette County. Plaintiff received a verdict for $1,800 for the loss of his automobile and $300 attorneys' fees. Defendant has appealed.

By his petition plaintiff claimed $2,250 as the cash value of the car insured, $225 damages and $300 attorneys' fees because of defendant's alleged vexatious refusal to pay the loss. By its answer defendant admits the issuance of the policy pleaded and that it was in effect on September 29, 1953, on which date the plaintiff's automobile described in the policy was destroyed by fire; denies the allegations of vexatious delay and makes a tender of $1,490 for the loss of the car. The sole issues were the cash value of the automobile at the time of its destruction and the defendant's liability for penalties as for vexatious delay.

According to the plaintiff's evidence the plaintiff, a farmer 23 years of age and married, purchased a 1952 70B Tudor Mercury automobile in August, 1952. The purchase price was $2,835.67. It was equipped with radio, heater, overdrive, fender skirts and backing signals. He added windshield washer, back seat heater, white sidewall tires, seat covers and an undercoat job. He drove the car 14,000 miles. He had slightly dented the front of the hood and had knocked off the Mercury emblem. The original paint and the original white-wall tires were on the car and in good condition. The car had been operated by the plaintiff and his wife entirely over concrete roads and for short distances. It had never been in any kind of a wreck.

After the plaintiff's car was destroyed by fire on September 29, 1953, he notified defendant's inspector, who came three or four days later to inspect it. With plaintiff's consent the car was removed to a garage at Ridge Prairie, Missouri. There the investigator removed the cylinder head and found a hairline crack in the left bank, from the valve intake seat through to the cylinder bore of Cylinder No. 2. The crack extended 8/16ths of an inch from the valve seat to the edge of the cylinder bore, and down the cylinder wall about 7/16ths of an inch. The investigator reported to the plaintiff that the actual cash value of the car on the date of the loss was $1,650, less $300 on account of the cracked block. He offered the plaintiff $1,350.

Plaintiff had planned to sell his car and to buy a cheaper one in order to use the difference in funds to pay a note at a local bank, and a few weeks before the car was destroyed by fire he sought to ascertain its cash value. He talked with Henry Engle, a dealer in Mercury automobiles in Marshall, Missouri, from whom he had bought the car. Engle told the plaintiff he thought the car was worth around $2,250 and made the plaintiff a proposition based on that valuation. Plaintiff wanted a little more for his car and made no deal at the time. There was no change in the condition of the car between the date of that conversation and the date of the fire.

On the witness stand Henry Engle said his attention had since been called to the fact that there was a hairline crack in the block of the plaintiff's car, and the witness said he had his shop foreman examine it and describe it. Engle said he would have given the plaintiff $2,250 even if he had known of the crack in the block. He said, however, that when he placed that valuation on the car he was talking about a

trade for a new Mercury car. "Q. Anyhow, you wouldn't have given him $2,200 out of your bank account for that car on that date, would you? A. That wasn't the kind of a deal that we were making." "Q. And that wasn't what you were even thinking of doing when you said $2,200? A. No, I was thinking about selling him another car." However, he said that, in his opinion, the car was "worth what I offered for it", and could have been sold for $2,250 or more. He said he believed he could have fixed it up and cleaned it up and sold it for about $2,295. "That's about probably what I would have priced it." He said he made a profit on the new cars sold on trades. On the original price of the car when the witness sold it to the plaintiff, the witness had allowed the plaintiff $1,000 on a Ford car. He testified from the Red Book used by the defendant at the trial, that the price of a used Mercury of the model in question was $1,965, plus $65 for the overdrive, $45 for the heater, and $55 for the radio. The witness added $15 for the curb buttons, $20 for the undercoat, and $20 extra for the white sidewall tires, $9 for the rear seat heater, $7 for the windshield washer, $40 for the seat covers, and $15 for the fender skirts, making a total of $2,256 as the "retail value of the car", based on averages over the entire country.

Mr. Dickson, shop foreman for Mr. Engle's company, said he had difficulty in finding the crack in the block of the plaintiff's car, and had to use a wire brush and a flash light to detect it. It was his opinion that the crack was in its original casting; that it had reached its maximum size and length; that it would not impair the operation of the car; that it would contract and expand with the whole block and he did not believe it would get any worse.

The plaintiff talked with Mr. Engle and his foreman about the crack in the block of his motor and they told him they would put in a new block for a little over $100, including labor. After the plaintiff reported that to defendant's adjuster, defendant offered him $1,450 to settle, and finally raised that amount to $1,490. The

plaintiff refused this and brought this action on December 16, 1953.

Several automobile dealers testified for the defendant that the crack in plaintiff's motor block did not likely result from the fire; that plaintiff's car, in good condition, would probably have had a cash value of $1,450, but with a cracked block it would be worth about $1,000; that he should have a new block; that only a few of the accessories on the plaintiff's car would affect the value of the car, and that the Red Book values were high. They said that in September, 1953, Mercuries were selling from $500 to $700 under list price at all dealers; that $1,300 would be too much for such a car with a cracked block.

Defendant's adjuster said he investigated plaintiff's claim within three or four days after notification, he having other business in the community. He described the crack in the motor. He said that he consulted the advertisements in Kansas City and St. Louis papers for values of similar cars and compared them with the Red Book values. He said that in his opinion $1,500 would be the actual cash value of plaintiff's automobile if in good condition, but on account of the crack in the block that value should be reduced at least $160, and that he made the final offer of $1,650 to the plaintiff, less $160, or a net amount of $1,490. He said he could have bought a new Mercury car comparable to the plaintiff's car for $2,285.

Defendant's property damage manager testified and said that he had authorized the final offer made, although in his opinion, the cash value of plaintiff's car was $1,500, without a cracked block. He said he could have purchased a new 1953 Mercury of similar model for $2,285, two weeks after plaintiff's car was burned.

■ The defendant claims prejudicial error in the admission of plaintiff's testimony that witness Engle had offered him $2,250 for the car several weeks before the car was burned, and the testimony of Engle to the same effect, such having to do with the trade-in value and not the actual cash value. Such testimony was admitted

over the objection of the defendant and a motion to strike it was denied. As a general rule evidence of mere offers to buy are not admissible to prove value. In City of St. Louis v. Gerhart Realty Co., 328 Mo. 103, 40 S.W.2d 661, 664, the court said: "'Oral and not binding offers are so easily made and refused in a mere passing conversation and under circumstances involving no responsibility on either side as to cast no light upon the question of value, and they are unsatisfactory, easy of fabrication, and even dangerous. While all these objections might not apply in every case, it is thought best by most courts to reject evidence of offers altogether'". See, also, Missouri Public Service Co. v. Hunt, Mo.App., 274 S.W.2d 27, 31; 20 Am. Jur., p. 341, Sec. 375.

■ On the other hand, plaintiff contends that Engle commingled with his valuation of the car for trade-in purposes his estimate of the actual cash value, and, further, that there is no rule of law that valuations for trade-in purposes are not admissible as some evidence of the cash value. Plaintiff further questions the manner in which objections were made to such testimony. However, we will consider the objection on its merits. Whether trade-in values are admissible as tending to prove cash values we need not here determine. The witness Engle did testify that the value fixed by him was for purposes of trade for another car, but that such value was, nevertheless, the actual cash value of the car; that is, it could have been sold for that price, and that he would have probably so priced it if the deal had been made, making a profit also out of the new car. Furthermore, there was other evidence of the cash value of the car. The price paid for the car thirteen months prior to the loss was shown and the cost of the accessories added, and evidence of the average value of a car of such model and make, and equipped with the various accessories as published in the Red Book used by the defendant. If it was error for the court to refuse to strike Engle's testimony regarding his offer or trade-in value, it was

harmless error in view of his testimony that the actual cash value was the same.

■ Defendant next asserts that the plaintiff failed to prove facts upon which relief could be granted and that the judgment should have been entered for the defendant non obstante veredicto. No specifications are shown under this point and the same presents nothing for our review. 42 V.A.M.S. Supreme Court Rules, rule 1.08; Ambrose v. M. F. A. Co-op. Ass'n, Mo., 266 S.W.2d 647.

Defendant contends that the court erred in admitting plaintiff's Exhibit No. 1 in evidence, which was an invoice showing the purchase of the automobile in question on August 11, 1952, as it did not tend to prove the actual cash value of the car on September 29, 1953.

■ The cost of the car, as we have said, is, together with other circumstances shown, some evidence of its cash value on the date of the loss. There was accompanying evidence as to the age of the car, its treatment, the mileage and its general condition, and the jury in determining the later value could consider these elements as they would affect the original cost. Dingman v. St. Louis Public Service Co., Mo.App., 52 S.W.2d 584; Cothren v. Kansas City Laundry Service Co., Mo.App., 242 S.W. 167; 32 C.J.S., Evidence, § 1049 a, page 1136; Houghton v. Grimes, 103 Vt. 54, 151 A. 642; 5 Am.Jur. page 906, Sec. 748. We believe the invoice was properly admitted.

For its final point the defendant urges that there is no evidence of vexatious refusal to pay as a basis for allowing attorneys' fees, nor is there evidence to support the services claimed nor value thereof.

There was evidence that defendant's inspector, within three or four days after receiving notice of the loss of the car by fire, came out to plaintiff's farm to inspect it. The car was thereafter removed with plaintiff's consent to a garage in town. The defendant did not dispute the issuance or existence of the policy nor the identity of

the car, nor its total destruction. It did not deny its liability for the loss. It disputed only the extent of that liability, namely, the cash value of the car. Investigation disclosed a crack in the motor block, which plaintiff admits, although claiming the same to be inconsequential. Defendant further claimed that plaintiff's valuation was far in excess of the cash value. The defendant investigated the market for such car in the condition existing at the time of the loss, and had two or three conversations with the plaintiff regarding the valuation. On October 23, it reported to the plaintiff that his car had depreciated $700; that its cash value was $1,650, less $300 because of the cracked block. It also asserted that a new car of similar model could be purchased for $2,000. Meanwhile, the plaintiff had purchased another automobile within 30 days after the fire, within which period the defendant had the alternative right under its policy to replace the loss instead of paying its cash value. Nevertheless, the defendant informed the plaintiff that it would proceed to settle for the cash value under the terms of the policy, regardless of its right of replacement. Thereafter, the plaintiff made inquiry as to the cost of a new motor block and reported to the defendant that he could obtain a new one installed for $100, including labor. Subsequently, the defendant increased its offer by $100, to a total of $1,450, which was finally raised to $1,490. On that day, December 16, plaintiff instituted this action.

■ Section 375.420 RSMo 1949, V.A.M.S., provides that "In any action against any insurance company to recover the amount of any loss under a policy of fire, * * * if it appear from the evidence that such company has vexatiously refused to pay such loss, the * * * jury may, in addition to the amount thereof and interest, allow the plaintiff damages not to exceed ten per cent on the amount of the loss and a reasonable attorney's fee * * *". This is a punitive statute and must be strictly construed. Scott v. Missouri Ins. Co., Mo.App., 246 S.W.2d 349. "The insurer is allowed to entertain an honest difference of opinion as to its liability *and the extent thereof*". (Italics supplied.) Howard v. Aetna Life Ins. Co., 350 Mo. 17, 164 S.W.2d 360. It was said in Patterson v. American Insurance Co. of Newark, N. J., 174 Mo.App. 37, 44, 160 S.W. 59, 62, frequently cited and approved by the courts of this state: "And while affirmative proof is not required to show vexatious refusal, yet the penalty should not be inflicted unless the evidence and circumstances show that such refusal was willful and without reasonable cause as the facts appeared to a reasonable and prudent man before the trial; and merely because the judgment, after trial, is adverse to defendant's contention is no reason for inflicting the penalty." See, also, Adams v. State Auto Ins. Ass'n of Des Moines, Iowa, Mo.App., 265 S.W.2d 738, 741.

■ In the instant case the difference in the estimates of the plaintiff and the defendant as to the cash value of the car was substantial. Admittedly the car was a used car, over a year old and had been driven over 14,000 miles. There was a crack in the motor block, but of conflicting degrees of estimated effect on the cash value. Negotiations had been intermittently carried on to the time of suit, about two and a half months, a period of delay not vexatious under the circumstances. Barton v. Farmers Ins. Exchange, Mo.App., 255 S.W.2d 451. There was no evidence of fraud or bad faith on the part of either party or their witnesses in their estimates. "The word 'vexatiously,' as used in the statute, has been defined by the decisions of this court to mean without reasonable or probable cause or excuse". Camdenton Consolidated School District, etc., v. New York Casualty Co., 340 Mo. 1070, 1092, 104 S.W.2d 319, 331.

■ It has frequently been held in this state that the right of an insurance company to resist payment cannot be determined by the facts as found by the jury, but only by the facts as they reasonably

appeared to the insurer before trial. State ex rel. Continental Life Ins. Co. of Kansas City v. Allen, 303 Mo. 608, 262 S.W. 43, 46; National Bank of Commerce in St. Louis v. Maryland Casualty Co., 307 Mo. 417, 270 S.W. 691, 699; State ex rel. Metropolitan Life Ins. Co. v. Shain, 334 Mo. 385, 66 S.W.2d 871, 876; Smith v. Aetna Ins. Co., Mo.App., 269 S.W. 682. Nor does the mere fact that the verdict was adverse to the defendant on the main issue of liability affect the liability of the defendant for "vexatious delay". Patterson v. American Insurance Co. of Newark, N. J., supra. But the verdict may, and plainly does in the present case, illustrate the fact that, in the absence of fraud or bad faith, the minds of persons may reasonably differ widely as to valuations on the same set of facts. The plaintiff here sued for $2,250 as the valuation of his car; the jury allowed him $450 less, to-wit, $1,800; the defendant's top offer was $1,-490, $760 less than the plaintiff's demand, but $310 less than the jury allowed. The defendant's offer was $140 closer to the jury's valuation than was the plaintiff's demand. In our opinion there was no substantial evidence of vexatious delay on defendant's part and it was error to submit that issue to the jury.

Having held the allowance of attorneys' fee was not authorized by the evidence, it is not necessary that we pass on defendant's last point that the proof did not support the rendition of the legal services claimed, nor the value thereof. If, within fifteen days after the date of the filing of this opinion, the plaintiff will remit the $300 of the verdict and judgment allowed for attorneys' fee, the judgment, as so reduced to $1,800 for loss of the car, will be affirmed with interest from date of the filing of this opinion; otherwise the judgment will be reversed and the cause remanded for retrial. It is so ordered.

All concur.

SPERRY, C., not participating.